UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:21-cv-6-MOC

| DENNIS WILLIAMS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| KILOLO KIJAKAZI,<br>Acting Commissioner of<br>Social Security, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 15, 21). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    Administrative History**

In May 2017, Plaintiff protectively filed an application for a supplemental security income under Title XVI alleging that he had been disabled since April 1, 2014. (Tr. 15, 172–80). Plaintiff's application was denied initially and upon reconsideration. (Tr. 15, 120–23, 127–31). Administrative Law Judge ("ALJ") Clinton C. Hicks held a hearing on June 5, 2019, at which Plaintiff, his attorneys, and an impartial vocational expert (VE) appeared. (Tr. 15, 37–68).

On January 25, 2017, the ALJ decided that Plaintiff was not disabled within the meaning of the Act from the application date. (Tr. 15–29). The Appeals Council denied Plaintiff's request for review on November 20, 2020. (Tr. 1–6). Having exhausted his administrative remedies,

-1-

Plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision.

## II.     Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

#### b. Sequential Evaluation

For the purposes of Title XVI of the Act, "disability" means "the inability to do any substantial gainful activity [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix

1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

The ALJ followed the five-step sequential evaluation in the analysis of Plaintiff's alleged disability. See 20 C.F.R. § 416.920(a). In particular, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date. (Tr. 17). The ALJ found at step two that Plaintiff had the following severe, medically determinable impairments: stage 4 cirrhosis, chronic obstructive pulmonary disease (COPD)/emphysema, asthma, pulmonary hypertension, lumbar degenerative disc disease, status post septic right hip arthritis, umbilical hernia, edentulous, obesity, bipolar disorder, post-traumatic stress disorder (PTSD), anxiety, antisocial personality disorder, and severe opioid dependence. (Tr. 17). The ALJ found at step three that none of Plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 17–20).

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform sedentary work, defined in 20 C.F.R. § 416.967(a), except: avoid concentrated exposure to dust, fumes, gases, pulmonary irritants, etc.; can perform simple, routine, repetitive tasks of unskilled work; no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional interaction with the public, supervisors, and coworkers; no complex decision making; no crisis situations; no constant change in routine; can stay on task for two hours at a time; needs to elevate the feet while seated about twelve inches (about the height of a box of copy paper). (Tr. 20). The ALJ found at step four that Plaintiff was unable to perform any past relevant work. (Tr. 26–27) and, at step five, that jobs existed in significant numbers in the national economy that Plaintiff—given his age, education, work experience, and RFC—could perform. (Tr. 27–28). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act the application date. (Tr. 29).

### V.     Discussion

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ's decision was constitutionally defective because the Social Security Act provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers; (2) substantial evidence does not support the ALJ's RFC determination because (a) the ALJ failed to provide a reasoned analysis of the medical evidence and opinions as a part of the RFC determination, (Pl. Br. 11–17); (b) the ALJ erred in his evaluation of the opinions from Dr. Law and Dr. Girmay; (c) the ALJ failed to evaluate the NCDHHS Medicaid decision; and (d) the ALJ failed to resolve a conflict between the Dictionary of Occupational Titles (DOT) and the vocational expert's testimony regarding the limitation to simple, routine, repetitive tasks of

unskilled work with no complex decision making and the positions of ticket counter (DICOT 219.587-010, 1991 WL 671989) and microfilming document preparer positions (DICOT 249.587-018, 1991 WL 672349). (Pl. Br. 21–22).

### A. Plaintiff's Separation of Powers Argument

Plaintiff first argues that SSA's decision denying his disability benefits claim was constitutionally defective because the Social Security Act provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers. For the following reasons and for the reasons stated in Defendant's memorandum in opposition, the Court disagrees.

First, the parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. See Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op."). But without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination.

As the Supreme Court recently explained in Collins v. Yellen, 141 S. Ct. 1761, 1787-89 (2021), even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused him harm. Plaintiff cannot make such a showing. Indeed, as discussed below, a growing number of district courts around the country have considered arguments similar to Plaintiff's argument here and have denied any relief. See Section A.2 (citing 15 decisions).

As an initial matter, the ALJ who issued the final decision denying Plaintiff's claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction. Rather, the ALJ had his appointment ratified by an Acting Commissioner of Social Security—whom the President could have removed from that role at will, at any time. Thus, the removal restriction had no impact on the ALJ's appointment.

Most fundamentally, Plaintiff has not—and cannot—show that Section 902(a)(3)'s removal restriction affected the determination of his claim in any way. Under Collins, therefore, he has no entitlement to a new hearing. Collins specifies that a party seeking retrospective relief based on an unconstitutional removal restriction must demonstrate that the restriction inflicted compensable harm. Plaintiff has sustained no such harm.

A variety of other legal doctrines—harmless error, de facto officer, and the rule of necessity, as well as broad prudential considerations—reinforce the clear takeaway from Collins that Plaintiff is not entitled to relief simply because 42 U.S.C. § 902(a)(3) violates the separation of powers.

**B. Plaintiff's Claim that Substantial Evidence Does not Support the ALJ's RFC Determination**

**1. The ALJ properly considered objective findings in crafting the RFC.**

In arguing that substantial evidence does not support the ALJ's RFC determination, Plaintiff first asserts that the ALJ failed to provide a reasoned analysis of the medical evidence and opinions as a part of the RFC determination. (Pl. Br. 11–17). The Court finds, however, that the evidence supporting the ALJ's decision far exceeds the "more-than-a-mere-scintilla threshold" to survive this Court's deferential review. Thus, Plaintiff fails to establish a legal basis for his claim.

When challenging the ALJ evaluation of Plaintiff's mental impairments, Plaintiff asserts that the ALJ cherry-picked the evidence. (Pl. Br. 12–14). Contrary to Plaintiff's argument, the ALJ considered all evidence in making his findings. Notably, Plaintiff failed to show up for two consultative medical examinations. (Tr. 24, 2894–99). The consultative psychological examination that Plaintiff participated in for a prior application revealed that he was cooperative, his judgment and insight were fair, he was fully oriented, and his speech was normal. (Tr. 24, 1122–1123). Another consultative examination was performed by the same consultative doctor, Dr. Mary Beth Law, in May 2017. For that examination, the ALJ acknowledged that Plaintiff had difficulty completing the questionnaire and presented impairments in immediate retention and recall as well as concentration. (Tr. 24, 1162–64).

Plaintiff did not begin outpatient mental health treatment until Fall of 2017. (Tr. 24). Initial assessments show that Plaintiff endorsed symptoms such as irritability, depression, anxiety, and anger. (Tr. 24). Subsequent treatment records confirm that Plaintiff's symptoms improved with medication and therapy. (Tr. 24, 1425–26, 1428, 1432, 1441, 1449–50). Plaintiff asserts that treatment records from November 2018 and May 2019 confirm that the ALJ mischaracterized his response to mental health treatment. (Pl. Br. 13). However, these two examples of moderate findings do not negate the overall improvement illustrated by the mental status examinations of record, as discussed by the ALJ. (Tr. 24, 1425–1426, 1428, 1432, 1441, 1449–50).

The ALJ found that Plaintiff's severe mental impairments resulted in functional limitations, but also that these impairments were not disabling. These facts are not contradictory, and it was the ALJ's duty to consider the extent of the restrictions caused by Plaintiff's impairments. In doing so, it was proper for the ALJ to consider whether objective findings were

generally mild to moderate. It was also appropriate for the ALJ to consider whether treatment modalities were effective, as well as the few significant objective findings during the relevant period. (Tr. 23–26). "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Importantly, the ALJ evaluated all of the evidence, which revealed that recent objective findings were mild to moderate and that Plaintiff's condition was stable with medication management and treatment. (Tr. 23–26).

Plaintiff also takes issue with the ALJ's assessment of his COPD because heat "seemed to trigger his symptoms." (Pl. Br. 14). However, there are not any definitive findings that show that heat certainly caused functional limitations or debilitating symptoms. In fact, the ALJ's discussion of the relevant evidence, as it relates to Plaintiff's COPD, reveals mild findings with rare exacerbations. (Tr. 22). Therefore, there is nothing to show that additional functional limitations were necessary. Accordingly, the ALJ's evaluation of Plaintiff's impairments and the corresponding RFC are supported by substantial evidence. (Tr. 17–26).

**2. The ALJ's evaluation of the opinion evidence is supported by substantial evidence.**

With respect to the evaluation of opinion evidence, on January 18, 2017, the agency published revisions to its regulations regarding the evaluation of medical evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). The revised regulations simplify the agency's policies and reflect changes in the national healthcare workforce and in the manner that individuals receive medical care, while allowing the agency to continue making accurate and consistent disability determinations and decisions under the Act. Id. at 5844. The

revised regulations took effect on March 27, 2017. Id. Several important regulatory changes apply strictly to claims filed on or after March 27, 2017. See, e.g., 20 C.F.R. § 416.920c (2017) (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017).[1] For instance, the revised regulations redefine how evidence is categorized specifying five categories of evidence: (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[2] See 20 C.F.R. § 416.913(a) (2017).[3] The revised regulations also redefine what the agency considers a "medical opinion." See 20 C.F.R. § 416.913(a)(2), (3) (2017);[4] see 81 Fed. Reg. at 62,562.

---

[1] See also Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62,560, 62,578 (proposed Sept. 9, 2016) (explaining the proposed implementation process).

[2] Under the prior regulations, evidence from Federal and State agency medical and psychological consultants was categorized as both medical opinions and administrative findings of fact. 81 Fed. Reg. at 62,563. The revised regulations place this evidence into a single category of evidence called "prior administrative medical findings," which are findings, other than the ultimate determination on whether a claimant is disabled, about medical issues made by the consultants at a prior level of review in the claimant's current claim based on their review of the evidence. Id. at 62,564; 20 C.F.R. § 416.913(a)(5) (2017).

[3] Compare with 20 C.F.R. § 416.912(b)(1) (2016). Additionally, this brief will generally cite to 20 C.F.R. Part 416, which addresses SSI claims, but substantively identical provisions at 20 C.F.R. Part 404 which address DIB claims.

[4] For claims filed by adults on or after March 27, 2017:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

Significantly, the revised regulations alter how the agency considers medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017, as discussed further below. See 20 C.F.R. § 416.920c (2017). When evaluating the opinion evidence for claims filed on or after March 27, 2017, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) while considering five regulatory factors:(1) supportability; (2) consistency; (3) relationship with the claimant, including the (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. § 416.920c(a)-(c) (2017).

Of the five factors, the ALJ will explain how he considered the factors of supportability and consistency, which are the two most important factors in determining persuasiveness. 20 C.F.R. § 416.920c(b)(2) (2017). The revised regulations clarify how evidence from Federal and State agency medical and psychological consultants—now deemed prior administrative medical finding(s) (except for the ultimate determination about disability)—is considered. The regulations provide that while ALJs are not required to adopt prior administrative medical

---

      (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
      (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.
20 C.F.R. § 416.913(a)(2) (2017). By contrast, the prior regulations and the regulations that apply to claims filed before March 27, 2017, provide that statements from an acceptable medical source that reflect judgments about the nature and severity of a claimant's impairment(s), including the claimant's symptoms, diagnosis, and prognosis, are considered "medical opinions." 20 C.F.R. § 416.927(a)(2) (2016); id. at § 416.927(a)(1) (2017).

findings, they must still consider this evidence in accordance with the Commissioner's regulations as appropriate, inasmuch as Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation. 20 C.F.R. § 416.913a (b)(1) (2017) (citing §§ 416.920b, 416.920c, 416.927). Importantly, the regulations deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3), (2017).

**3. The ALJ did not err in his evaluation of the opinions from Dr. Law and Dr. Girmay.**

As an initial matter, "there is no requirement that an ALJ base his RFC finding, or any particular limitation in it, on a medical opinion." Wykle v. Saul, No. 1:19-cv-155-MOC, 2020 WL 697445, at *6 (W.D.N.C. Feb. 11, 2020) (citations omitted); see also 20 C.F.R. § 416.927(a)-(c); Felton-Miller v. Astrue, 459 Fed. App'x. 226, 2301–31 (4th Cir. 2011) (unpublished); Jackson v. Comm'r, Soc. Sec., No. CCB-13-2086, 2014 WL 1669105, at 2 (D. Md. Apr. 24, 2014) (an ALJ "need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment."). It is the responsibility of the ALJ, and only the ALJ, to assess a claimant's RFC. 20 C.F.R. § 416.946(c). Indeed, the RFC determination is a legal decision rather than a medical one. Determining a claimant's RFC is solely within the province of the ALJ, who considers "all of the relevant medical and other evidence" when making a finding. 20 C.F.R. § 416.945(a)(3); see also 20 C.F.R. § 416.927(e), 416.946.

As the ALJ noted, consultative examining doctor, Dr. Law, performed the consultative examination both for a prior application and for the instant claim. (Tr. 24). The more recent consultative examination indicated that Plaintiff exhibited difficulties with memory and concentration. Dr. Law opined that Plaintiff's ability to sustain attention to perform simple, repetitive tasks was mildly limited, his ability to tolerate stress and pressure associated with day-to-day work activity was moderately limited, and his ability to relate to coworkers, supervisors was moderate to severe. (Tr. 26, 1123). The ALJ explained that Dr. Law's opinion regarding Plaintiff's ability to sustain attention and concentration was persuasive given that it was supported by the record. (Tr. 26). However, the evidentiary record did not fully support the moderate to severe limitations relating to coworkers and supervisors, as he was noted as being able to shop in stores, had a girlfriend, and treatment records generally describe him as pleasant and cooperative. (Tr. 26). Therefore, the ALJ did not err in finding that this portion of Dr. Law's opinion was unpersuasive.

Next, Plaintiff takes issue with how the ALJ evaluated the opinion of Aregai Girmay, M.D. (Pl. Br. 16). Dr. Girmay and Ciara Cotton, MA only submitted a letter stating that Plaintiff was "unable to work due to his medication conditions. Mr. Williams has COPD and cirrhosis of the liver, herniaectomy, sleep apnea, and depression." (Tr. 292). However, this letter does not meet the agency's definition of a medical opinion. See (Fn. 8). Therefore, the ALJ was not required to examine this letter or consider it as it is not a medical opinion per the agency's regulations.

Even if the Court were to find that the ALJ erred in failing to address this letter, such error was harmless. See Dover v. Astrue, No. 1:11CV120, 2012 WL 1416410, *5 (W.D.N.C. Mar. 19, 2012) ("Even assuming that the ALJ did err, such error by the ALJ was harmless

because remand would not lead to a different result."). This note was conclusory and failed to provide any functional assessments that were functionally relevant. In other words, this letter merely states that Plaintiff is unable to work and fails to provide any vocationally relevant assessments.

**4. The ALJ was not required to evaluate the NCDHHS Medicaid decision.**

Plaintiff's records include a Medicaid determination from North Carolina's Department of Health and Human Services (NCDHHS) from January 2019. (Tr. 285–89). The applicable rules now explain that "[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us[,] and… we will not provide any analysis in our determination or decision about [such] a decision." See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5,844). The Agency also set out a category of "[e]vidence that is inherently neither valuable nor persuasive," and included decisions by other governmental agencies and nongovernmental entities in that category. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1). As a result, the adjudicator "will not provide any analysis about how we considered such evidence in our determination or decision." Id. Furthermore, SSA rescinded Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, effective March 27, 2017, because its instruction that adjudicators should explain the consideration given to the disability decisions of other governmental and nongovernmental entities was not consistent with the new final rules. Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263. (Mar. 27, 2017); see also 82 Fed. Reg. 16,869 (amending and correcting the notice published at 82 Fed. Reg. 15,263).

Here, the ALJ noted the NCDHHS decision, but also noted that the regulations do not require an analysis, as it was not binding. (Tr. 26). The fact that the ALJ did not evaluate this Medicaid determination is not reversible error, as he was not required to do so under the regulations. Therefore, the ALJ's determination, including his non-discussion of Plaintiff's Medicaid determination from NCDHHS, is correct as a matter of law and does not require remand. See Gilbert v. Kijakazi, No. 5:21-CV-00036-KDB, 2022 WL 68765, at *4 (W.D.N.C. Jan. 6, 2022).

**5. Substantial evidence supports the ALJ's step five determination.**

Plaintiff next suggests that the ALJ failed to resolve a conflict between the Dictionary of Occupational Titles (DOT) and the vocational expert's testimony regarding the limitation to simple, routine, repetitive tasks of unskilled work with no complex decision making and the positions of ticket counter (DICOT 219.587-010, 1991 WL 671989) and microfilming document preparer positions (DICOT 249.587-018, 1991 WL 672349). (Pl. Br. 21–22). However, as Plaintiff notes, the ALJ asked whether a conflict existed between the DOT and his expert testimony; the vocational expert said there were no conflicts (Tr. 27–29, 62). Additionally, the ALJ went to great lengths in soliciting vocational testimony and responses to interrogatories. (Tr. 27-29, 324–28).

Even if this court were to determine that a conflict existed, the position of press clippings cutter and paster (DICOT 249.587-014, 1991 WL 672348) still exists in significant numbers, as the vocational expert testified 4,000 jobs exist in the national economy. (Tr. 28). On numerous occasions, when considering the Commissioner's burden to establish a significant number of jobs, the Fourth Circuit has found 110 jobs to be a significant number of jobs. See Guiton v. Colvin, 546 Fed. Appx. 137, 142 (4th Cir. 2013) (recognizing that in Hicks v. Califano, 600 F.2d

1048 (4th Cir. 1979), the court found 110 jobs in the claimant's state to be a significant number of jobs); Hodges v. Apfel, 203 F.3d 820 (4th Cir. 2000) ("Hodges asserts that he qualifies for no more than 153 jobs. That number suffices to defeat Hodges's claim for disability benefits."); Koonce v. Apfel, 166 F.3d 1209, *5 (4th Cir. 1999) (recognizing that in Hicks, the court found that as few as 110 jobs constitute a significant number); Hyatt v. Apfel, 153 F.3d 720, 1998 WL 480722, at *3 (4th Cir. Aug. 6, 1998) ("We previously have found that as few as 110 jobs constitute a significant number."); Brittain v. Sullivan, 956 F.2d 1162, *4 (4th Cir. 1992) ("As noted in Hicks v. Califano…110 jobs in the marketplace is a sufficient number of jobs under the statute to be deemed 'substantial'…."). Thus, the ALJ's conclusion that there were a significant number of jobs in the national economy that Plaintiff could perform was proper.

As his final point, Plaintiff takes issue with the ALJ's step five finding by arguing that the jobs of press clippings cutter and paster and microfilming document preparer are obsolete. (Pl. Br. 22). In support, Plaintiff cites to the Occupational and Medical-Vocational Claims Review Study as a source which states that these jobs do not exist in significant numbers in the national economy. (Pl. Br. 22–23). However, the study is not a publication that the agency has taken administrative notice of as a source of reliable job information for purposes of step five. See 20 C.F.R. § 416.966(d)(5).

The ALJ is obligated to resolve conflicts between the vocational expert testimony and the DOT. There is no obligation to resolve a potential conflict between the vocational testimony and any other source of information Plaintiff chooses. As this Court has affirmed, "the information provided by the Occupational and Medical-Vocational Claims Review Study . . . is not a governmental publication that the ALJ is required to take administrative notice of as a source of reliable job information. . . review here is not de novo and error cannot be assigned where the

Case 5:21-cv-00006-MOC   Document 27   Filed 03/17/22   Page 16 of 17

ALJ followed the regulations." <u>Taylor v. Berryhill</u>, No. 1:17-CV-290, 2018 WL 2418560 (W.D.N.C. May 29, 2018). This Court's jurisdiction is limited to reviewing the final decisions of the Commissioner to determine "if they are supported by substantial evidence and were reached through application of the correct legal standard" and not to determine if Plaintiff is disabled. <u>Craig</u>, 76 F.3d at 589; <u>see also</u> <u>Gilbert</u>, 2022 WL 68765, at *4. In sum, Plaintiff's final claim is without merit.

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson</u>, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 15) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 21) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: March 17, 2022

*[Signature]*

Max O. Cogburn Jr.
United States District Judge